```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
Joint Marketing International, Inc.,                  :
                                                      :
                    Plaintiff,                        :     **MEMORANDUM AND ORDER**
                                                      :
          -against-                                   :     05-CV-4818 (DLI)(VVP)
                                                      :
L&N Sales and Marketing, Inc., Scunci                 :
International, Inc., LN International, Inc.,          :
and NHL II – Pamco Partners, LLC,                     :
                                                      :
                    Defendants.                       :
------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

        Plaintiff, Joint Marketing International, Inc. ("JMI"), filed suit against defendants, L&N Sales and Marketing, Inc., Scunci International, Inc., LN International, Inc., and NHL II – Pamco Partners, LLC (collectively, "defendants"), on October 13, 2005. JMI alleges infringement of U.S. Patent 5,547,842 (the "'842 Patent"), a portable eyeglasses wiper, for which JMI was granted a license. Before the court is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party under Rule 19. Plaintiff also has moved for a preliminary injunction, which the court does not address at this time. For the reasons set forth below, defendants' motion is granted. However, dismissal of this action is stayed, and plaintiff is granted twenty days, i.e., by August 3, 2006, to file a new complaint joining the appropriate parties required to cure the standing defect. Failure to do so will result in the entry of an order dismissing this action.

**I.     Facts**

On September 20, 2005, JMI executed an "Exclusive License Agreement" (the "License Agreement") with Kun S. Chang ("Chang"), the inventor and owner of the '842 Patent, and Gainwise International Co., Ltd. ("Gainwise"), a manufacturing company. The License Agreement grants JMI the right to "exclusiv[e]ly sell, market and distribute the licensed product to all retail markets within" the United States and its territories, all Latin American Countries, and Canada. (Davis Decl. Ex. A ¶¶ 1.7, 3.0.) Chang warranted that he has "not knowingly granted any licenses or assignments to any other individual or entity in the territory of [the] agreement that would restrict the rights granted to [the] licensee." (*Id.* ¶ 2.0.) Though Chang and Gainwise are restricted from distributing the licensed product in the territory, they retain "the right to sell Products directly in Territory only to those customers in the ASI promotional market as listed in Appendix B," a list of six customers located in the United States. (*Id.* ¶¶ 3.2, 3.4, App. B.) JMI is permitted to grant sublicenses if it is "responsible for the operations of its sublicenses . . . as if the operations were carried out by the licensee." (*Id.* ¶ 3.1.) JMI is required to obtain "prior written consent" from Gainwise before any assignment of the License Agreement. (*Id.* ¶ 7.)

The License Agreement contains specifications by which JMI is required to purchase all of the licensed product from Gainwise. JMI must purchase a minimum of 2.4 million pieces of the licensed product per year and, if it fails to meet this requirement, Chang and Gainwise may terminate the agreement by giving written notice to JMI. (Davis Decl. Ex. A ¶ 5.1.) JMI may terminate the agreement by giving written notice to Chang and Gainwise if Gainwise does not deliver purchased quantities in a "timely fashion." (*Id.* ¶ 11.) Either party has a right to terminate the License Agreement if (1) the other party becomes bankrupt or has bankruptcy proceedings initiated against

it, (2) the other party commits a material breach that is not remedied within thirty days of receiving notice of default by the non-breaching party, (3) a "force majeure" occurrence prevents either party from fulfilling its obligations during a consecutive 90-day period, or (4) a change in ownership, management, or control occurs that is "prejudicial to the commercial interests of either party." (*Id*. ¶ 10.0.)

The provisions in the License Agreement addressing infringement by third parties are as follows:

> 6.0 As soon as LICENSEE becomes aware of a potential patent infringement claim, LICENSEE will immediately notice GAINWISE/CHANG of said infringement claim which will be followed by the commencement of legal proceedings against the infringing party or parties. JMI will also forward written notice to GAINWISE/CHANG of any action or claim asserted against the infringing party(s).
>
> 6.1 Upon obtaining any information with regard to a potential patent infringement claim of the product by a third party, GAINWISE/CHANG will immediately provide said information to JMI.
>
> 6.2 JMI, GAINWISE and CHANG agree to share in a joint participation for the litigation of the potential patent infringement claims. In exchange and consideration for its proportionate share of litigation expenses, GAINWISE/CHANG will fund their share of the litigation expenses, which include legal fees, costs, disbursements and expenses in furtherance of the legal action(s), by extending to JMI a credit against product purchases in an amount equal to THIRTY PERCENT (30%) of said litigation expenses. Said contribution of the thirty percent will entitle GAINWISE/CHANG to 30% of any and all net recovery and/or compensation from the legal action(s), including past infringement, if any, generated from the legal action(s) or claims. JMI will be therefore entitled to SEVENTY PERCENT (70%) of any and all net recovery and/or compensation from the legal action(s), including past infringement, if any, generated form the legal action(s) or claims. . . .
>
> 6.3 In any infringement suit or dispute, the parties agree to cooperate fully with each other. At the request and expense of the party bringing suit, the other party will permit access to all relevant personnel, records, papers, information, samples, specimens, etc., during regular business hours.

> 6.4 JMI will not assume nor will it be obligated to assume any prior claims and/or lawsuits filed or made by GAINWISE/CHANG prior to this agreement.
>
> 6.5 GAINWISE/CHANG hereby grants full litigation and claim authority to JMI for any and all decisions made during the course of any infringement claim.
>
> 6.6 All documents that JMI receives or possesses pertaining to the litigation of infringement claims will be forwarded to GAINWISE/CHANG by JMI.

(Davis Decl. Ex. A ¶¶ 6.0–6.6.) If JMI has already instituted an infringement suit against a third party and termination occurs, the License Agreement provides: "Gainwise agrees to allow licensee to conclude all legal claims and actions commenced prior to said termination date until a final conclusion is rendered." (*Id*. ¶ 10.1.)

## II. Standing to Sue for Patent Infringement

Pursuant to the Patent Act, only a "patentee" has standing to institute a civil action for patent infringement. 35 U.S.C. § 281. The Act defines "patentee" as "includ[ing] not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id*. § 100(d). The burden is on the plaintiff to show standing. *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

"The key question for determining standing of a licensee is whether the licensee as a matter of law has an exclusive property interest in the patent itself . . . ." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995) (quoting *Amgen, Inc. v. Chugai Pharm. Co.*, 808 F. Supp. 894, 904 n.11 (D. Mass. 1992)). Attached to every patent is "the right to exclude others from making, using, offering for sale, or selling the invention." 35 U.S.C. § 154. Holders of non-exclusive, or "bare," licenses do not have standing to bring a suit on their own, nor do they have

standing to join a patentee in a suit. *Sicom*, 427 F.3d at 976 (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995); *Ortho Pharm.*, 52 F.3d at 1031. This is because they have "no property interest in the monopoly of the patent, nor any contract with the patent owner that others shall not practice the invention. Hence the patent owner may freely license others, or may tolerate infringers, and in either case no right of the patent licensee is violated." *Ortho Pharm.*, 52 F.3d at 1031 (quoting *Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930)). An exclusive licensee, on the other hand, has standing to sue but only as a co-plaintiff with the patentee, who must be joined either voluntarily or involuntarily. *E.g.*, *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed. Cir. 2000) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468, 46 S. Ct. 166, 70 L. Ed. 357 (1926)). "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite*, 56 F.3d at 1552.

There is an exception by which an exclusive licensee may sue alone without having to join the patentee: An exclusive license that transfers "all substantial rights" in a patent is considered on par with an assignment and thus confers standing.[1] *E.g.*, *Sicom*, 427 F.3d 971; *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). That the license is labeled "exclusive" is not determinative. *Textile Prods.*, 134 F.3d at 1484; *see also Waterman*, 138 U.S. at 256

---

[1] As an exception to this rule, an exclusive licensee not possessing "all substantial rights" may sue where it is "necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S. Ct. 334, 34 L. Ed. 923 (1891)).

("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions"). The court "must ascertain the intention of the parties and examine the substance of what was granted." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991).

**III.    Analysis**

Defendants suggest that because JMI retains no patent right wholly to itself, the license is non-exclusive. The license only covers the right to "sell, market and distribute" the '842 Patent, and, under ¶ 3.4 of the Licensing Agreement, "Chang/Gainwise" retain the right to sell products directly to six customers. Although Gainwise is named in this limited right to sell, nowhere else in the agreement is it mentioned that Gainwise has any rights other than to manufacture, though the extent of such manufacturing rights is unknown. Chang warrants in ¶ 2.0 of the License Agreement that he has not granted any other licenses or assignments that would restrict the rights granted to JMI. Thus, it seems that the limited right to direct sales pertains to Chang only. A license may still be exclusive where some rights to make, use, or sell have been retained by the patentee. *See, e.g.*, *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (exclusive licensee had co-plaintiff standing where patentee retained "limited right to make, use, and sell products," including right to sell products to parties with whom it had pre-existing relationships); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (exclusive licensee had co-plaintiff standing where patentee retained rights to "develop and manufacture products (for sale only to [licensee]) and supervise and control [licensee]'s product development"). Because the agreement at least implies that others are precluded from practicing the invention in JMI's territory—for

example in ¶ 3.2, which precludes Chang and Gainwise from distributing the licensed product in the territory through anyone except JMI—JMI was granted an exclusive license.

However, upon examining the provisions of the License Agreement, the court concludes that it did not transfer "all substantial rights." Of particular importance in evaluating whether a transfer of "all substantial rights" has occurred is "whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." *Prima Tek II*, 222 F.3d at 1379. The reservation of limited rights to sell by Chang weighs against a finding that JMI has standing to sue by itself. *See Abbott Labs.*, 47 F.3d at 1132. Indeed, the policy behind not permitting licensees with fewer than "all substantial rights" to sue without joining the patentee is to prevent the accused infringer from having to defend multiple lawsuits. *See Aspex*, 434 F.3d at 1343 (citing *Vaupel*, 944 F.2d at 875–76). Another policy served by this rule is "to prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee." *Id*. (citing *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1314 (Fed. Cir. 2005)).

The restrictions on JMI's rights to sublicense in ¶ 3.1, the termination provisions in ¶ 10.0, and the requirements to keep Chang/Gainwise informed regarding potential patent infringement claims are not severe restrictions that would defeat JMI's standing. *See Vaupel*, 944 F.2d at 875. However, in addition to the limited right to sell retained by Chang, other factors weigh against a finding of "all substantial rights."

Contrary to what JMI argues, it is not entirely clear that JMI has an exclusive right to sue for infringement under the License Agreement. Though ¶ 6.5 gives JMI "full litigation and claim authority," this authority is for "all decisions made *during the course of* any infringement claim."

Thus, not only does ¶ 6.5 use the word "full" rather than "sole," but it also does not specifically mention the institution of infringement actions. Furthermore, ¶ 6.3 provides that "[a]t the request of *the party bringing suit*, the *other party* will permit access" to records (emphasis added), thus implying that JMI is not the sole party that may bring suit. In ¶ 6.2, JMI agrees to share with Chang and Gainwise "joint participation for the litigation of the potential patent infringement claims," but again, there is no specific mention that JMI must institute the claims. Read together, these provisions do not preclude Chang from instituting a suit for patent infringement, and this factor weighs against JMI's standing to sue alone. *See, e.g.*, *Abbott*, 47 F.3d at 1132 ("right to indulge infringements . . . normally accompanies a complete conveyance of the right to sue"); *Vaupel*, 944 F.2d at 875 (policy of preventing multiple lawsuits against alleged infringer is satisfied where complete right to sue is transferred to licensee). JMI's inability to assign its rights without prior written consent from Gainwise[2] also suggests that JMI was granted less than "all substantial rights." *See, e.g.*, *Sicom*, 427 F.3d at 979; *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

The instant case is similar to *Abbott Labs.*, where the patentee "retained a limited right to make, use, and sell products embodying the patented inventions, a right to bring suit on the patents if [the licensee] declined to do so, and the right to prevent [the licensee] from assigning its rights under the license to any party other than a successor in business." 47 F.3d at 1132. Here too, Chang "retained a significantly greater interest" in the '842 Patent compared with the situation in *Vaupel*, where "the only rights retained . . . [by the patentee] were a veto right on sublicensing by Vaupel,

---

[2] At this stage of the litigation, the court does not have any information concerning the exact relationship between Chang and Gainwise.

a reversionary right in the patent in the event of bankruptcy or termination of production by Vaupel, and a right to receive infringement damages." *Id*. As an exclusive licensee with less than all substantial rights, JMI does not have standing to sue without joining Chang.

IV.     **Rule 19 and Dismissal for Lack of Standing**

Fed. R. Civ. P. 19 provides as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

As discussed above, joinder of Chang is necessary under Rule 19. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(7) is granted.

A dismissal for lack of standing is usually without prejudice where the standing defect is curable. *Sicom*, 427 F.3d at 980; *Fieldturf, Inc. v. Southwest Recreational Indus.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (citing *H.R. Tech., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed. Cir. 2002)). As there is no indication in this case that allowing JMI time to join Chang would be futile, the court will allow JMI twenty days to cure the standing defect. *See Fieldturf*, 357 F.3d at 1269. The motion to dismiss is granted, but dismissal is stayed. The action will be dismissed with prejudice if the twenty days lapse without joinder of Chang.

## V. Conclusion

The court hereby grants defendants' motion to dismiss. However, dismissal of this action is stayed, and JMI is granted twenty days, i.e., by August 3, 2006, to file a new complaint joining Chang, whether voluntarily or involuntarily. If JMI fails to join Chang by August 3, 2006, the case will be dismissed with prejudice. If this case is permitted to continue, the parties will be directed to conduct further discovery, including on the nature of the relationship between Chang and Gainwise to ensure that all necessary parties to this lawsuit are joined, *see Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090, 2004 WL 2346152, at *7 (S.D.N.Y. Oct. 19, 2004), and on any issues required as a result of the joinder of Chang.

SO ORDERED.

DATED:   Brooklyn, New York
         July 14, 2006

                                                        _____/s/_____
                                                            DORA L. IRIZARRY
                                                      United States District Judge